■ DENNIS P. BRENNAN, as Trustee of the Health Benefits Fund of the Detectives' Endowment Association, Police Department of the City of New York, Inc., and as Trustee of the Retirees' Health & Welfare Fund of the Detectives' Endowment

Association of the City of New York, Inc., Appellant, v Philip Caruso, as Trustee of the Patrolmen's Benevolent Association Securities Benefit Fund and Retirees' Benefit Fund, Respondent. — Order, Supreme Court, New York County (Taylor, J.), entered October 24, 1983, which dismissed the complaint for failure to state a cause of action, affirmed, without costs and disbursements.

We affirm for the reasons stated by Justice Taylor. We would only add that plaintiff funds' voluntary withdrawal from the Patrolmen's Benevolent Association's Health & Welfare Fund was not a mutual disassociation by two contracting parties, as argued by the dissent. When plaintiffs unilaterally left the fund they relinquished all rights in the surplus, and any "windfall" is of their own choosing. Concur — Murphy, P. J., Kupferman and Sullivan, JJ.

Asch, J., dissents in a memorandum as follows: Plaintiff brought this action as trustee of the Health Benefits Fund of the Detectives' Endowment Association, Police Department of the City of New York, Inc., and the Retirees' Health & Welfare Fund of the Detectives' Endowment Association of the City of New York, Inc. (referred to as DEA or plaintiff hereafter) against defendant as trustee of the Patrolmen's Benevolent Association Securities Benefit Fund and Retirees' Benefit Fund (referred to as PBA and defendant hereafter).

On September 1, 1973, the DEA, with about 3,500 members, left the Superior Officers Association Welfare Fund and joined the defendant's Health and Welfare Fund. On March 1, 1979, the DEA withdrew from the defendant and created its own health benefits fund.

This action was commenced thereafter alleging, *inter alia,* that during plaintiff's membership in the PBA funds, the contribution by the city on behalf of each member of the DEA was $400 per year and that its membership accounted for 15% of the combined PBA fund membership during that period. Plaintiff asserted in the complaint and at Special Term that when it joined the defendant, the PBA funds had minimal or no reserves, and at the time it withdrew the reserves had increased to $6 million. Plaintiff thus sought an accounting and a proportional share of these reserves.

Special Term held, *inter alia,* in finding that the complaint failed to state a cause of action, that the contributions made by the city did not belong to any individual member in a vested fashion but merely entitled the participant to draw upon the health and welfare benefits the fund provided while the member was a participant. It analogized the plaintiff's claim to a demand

by an insured for return of premiums paid on a disability insurance policy to the extent the insured failed to recover the maximum amount under the policy.

I disagree and would therefore reverse as to the dismissal of the complaint. Plaintiff and defendant voluntarily associated and voluntarily agreed to separate. No provision was made, however, that one group would retain the entire accumulated assets during the period of their association. In effect, defendant has obtained a "windfall" for its beneficiaries at the expense of plaintiff's beneficiaries. The analogy used by Special Term was faulty. Both plaintiff and defendant herein are not insurers *or the insureds* but, rather, fiduciaries for the insureds. The surplus of $6 million allegedly in existence at this time was created in part with plaintiff's beneficiaries' moneys. Thus, defendant PBA, acting as a fiduciary, after using the city funds to purchase packages of insurance from carriers for *all* its beneficiaries, PBA and DEA alike, cannot appropriate the excess moneys solely for the benefit of one class of beneficiaries.